IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY NORWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-6220 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| OFFICER W. STOPKA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Randy Norwood, an inmate currently in the custody of the Kane County Sheriff, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Norwood claims that in December 2017, correctional officers at the Cook County Jail violated his constitutional rights by (1) failing to protect him from an attack; (2) failing to ensure that his dietary needs were met while his mouth healed from the injuries he allegedly sustained in the assault; and (3) denying him prescribed pain medication during his recuperation period. The defendants responded with a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) based on Norwood's settlement agreement and general release in a prior lawsuit. For the following reasons, the Court grants defendants' motion.

**Background**

Norwood was a pretrial detainee at the Cook County Jail at the time of the events giving rise to this lawsuit. Defendants W. Stopka, A. Rodriguez, M. Olaquez, J. Leblock, and A. Dyer are all Cook County correctional officers.

Norwood alleges that on the evening of December 6, 2017, correctional officials released him from the special management unit onto a tier in Division 9, the Cook County Jail's "supermax security unit." (R. 41, SAC, ¶ 1.) Norwood warned Defendant Stopka of a "possible safety issue" if

he were moved onto that tier. (*Id.*, ¶ 2.) Stopka ignored Norwood's concerns and placed him on the tier over his objections. That same evening, Norwood advised Defendant Rodriguez of his fears, to no avail. Rodriguez refused to allow Norwood to speak to a sergeant. Thereafter, Norwood submitted an inmate request form to his housing superintendent, but he received no response.

The following morning, Norwood informed Defendant Olaquez that he felt unsafe on the tier. Norwood told Olaquez that he wanted only to shower and then be locked back up in his cell for the day. Olaquez assured Norwood that there was nothing to worry about. Olaquez refused Norwood's request to call for a sergeant.

As Norwood was preparing to shower, another detainee asked him for a wick.[1] When Norwood did so, someone attacked him from his blind side. The blow was so forceful that it broke several bones in Norwood's face, dislodged a tooth, and knocked him to the ground in a state of unconsciousness. When Norwood awoke, he noticed that Olaquez was not at his post. The attack continued for another 15 to 20 minutes. Norwood's unnamed assailant chased him around the tier. Although Norwood was "running and screaming" for help, Olaquez was nowhere to be found. (SAC, ¶ 7.) The attacker finally caught Norwood and struck him in the face multiple times. The assailant then followed a current prisoner "trend" of pulling Norwood's pants down and spitting in his buttocks. (*Id.*, ¶ 8.) Throughout the ordeal, other detainees were threatening to attack Norwood if he continued to call out for help. The attack ended only because a counselor happened to enter Norwood's unit seeking his signature on a document.

---

[1] As the name suggests, a wick is apparently a tightly rolled strip of hygienic tissue that can be used as a lighter or candle. *See* https://writeaprisoner.com/prison-forum/general-prison-talk/prison-slang (visited February 13, 2021); *see also* "The Correctional Officers Guide to Prison Slang, https://afscmelocal3963.tripod.com/prison_slang (visited February 13, 2021).

Correctional officers placed Norwood in handcuffs, and then took him to the dispensary for medical treatment. A sergeant also took photographs and videos of Norwood's injuries to turn over to investigators (though Norwood maintains that no investigation took place).

Norwood underwent facial reconstruction at an outside hospital. He spent seven days and six nights at the hospital. Upon Norwood's hospital discharge, physicians prescribed rubber bands and brackets for his mouth, pain medication, and a special diet. According to Norwood, Defendants Leblock and Dyer were in charge of furnishing him with the prescribed medications and orthodontic supplies, but they failed to do so. Without the prescribed medications and equipment, Norwood's jaw healed improperly, he suffered from severe pain, he experienced sleepless nights, and he "starv[ed]." (SAC, ¶ 19.) Norwood says that he did not start receiving a liquid diet until December 30, 2017, some three weeks after the attack.

Norwood initiated this civil rights action against Sheriff Thomas Dart and "John Doe" correctional officers in September 2019. In June 2020, the Court granted Norwood leave to file a second amended complaint identifying the John Doe officers mentioned in preceding paragraphs.

Among their affirmative defenses, defendants asserted that "Plaintiff released all claims complained of in this Complaint pursuant to a 'Settlement Agreement and General Release' which was executed by Plaintiff when settling one of his prior cases before this Honorable Court, captioned '*Randy Norwood v. Fauzia Khan, Thomas Dart, Sheriff of Cook County, and Cook County*,' Case No. 18 C 4890, United States District Court for the Northern District of Illinois, Eastern Division." (R. 57, Defendants' Answer, p. 10, ¶ 1.)

Norwood was represented by counsel when he entered into the 2018 settlement agreement and general release as evidenced by the agreement:

> Plaintiff acknowledges that he reviewed this document with one of his attorneys and acknowledges that he understands the contents thereof, and executed this

3

> Agreement of his own free act and deed. The undersigned represent that they are fully authorized to enter into and bind the Parties to this Agreement.

(Case No. 18 CV 4890, R. 39-1, Ex. A, 11/18 Settlement Agmt. & General Release ¶ 17.)

**Legal Standard**

"[T]he correct vehicle for determining an affirmative defense on the pleadings is an answer and a motion for judgment on the pleadings under Rule 12(c)." *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6);" thus, courts "must determine whether the complaint states 'a claim to relief that is plausible on its face.'" *Gill v. City of Milwaukee,* 850 F.3d 335, 339 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In doing so, courts accept plaintiff's "factual allegations as true and draw reasonable inferences from them in his favor." *Taylor v. JPMorgan Chase Bank*, 958 F.3d 556, 562 (7th Cir. 2020).

**Discussion**

In their Rule 12(c) motion, defendants contend that the 2018 settlement agreement contains a general release that covers the present lawsuit. Norwood, in contrast, argues that the agreement was meant to release only the claims that were specifically referenced therein, namely, the claims in the 2018 *Norwood v. Khan* case. "A court's job in construing a negotiated release under Illinois law is to determine what the parties intended." *Engineered Abrasives, Inc. v. American Mach. Prods. & Serv., Inc.*, 882 F.3d 650, 653 (7th Cir. 2018). Specifically, "[u]nder Illinois law, 'the intention of the parties controls the scope and effect of the release; such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction.'" *Crosby v. City of Chicago,* 949 F.3d 358, 361 (7th Cir. 2020) (citation omitted). In construing the parties' intent, Illinois courts give contract terms that are clear and unambiguous their plain and ordinary meaning in the context of the contract as a whole. *Royce v. Michael R. Needle P.C.,* 950 F.3d 939, 951 (7th Cir. 2020).

In support of their argument that Norwood's 2018 settlement released the present claims, defendants point to the following paragraph of the agreement:

> Plaintiff for himself fully and forever releases, acquits and discharge Defendants, their agents, employees and former employees either in official or individual capacities, from ***any and all actions,*** suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity***, including but not limited to*** any and all claims for Constitutional, federal law or state law violations against Plaintiff, and/or any taken, damaged, disposed of, or destroyed property, and any costs accrued arising out of Plaintiff's allegations which are the subject of *Norwood v. Dart,* 18 C 4890, in the United States District Court for the Northern District of Illinois, Eastern Division.

(Agmt. ¶ 7) (emphasis added). Defendants maintain that the language "including but not limited to" indicates that the agreement was a general release discharging defendants of any and all actions, and not just the claims arising out of the 2018 lawsuit, as Norwood suggests. Indeed, under Illinois law, "the phrase 'including but not limited to,' … signals a broad release." *Darvosh v. Lewis,* 66 F.Supp.3d 1130, 1135 (N.D. Ill. 2014) (Castillo, J.). In further support that paragraph 7 is a general release is the carve-out paragraph immediately following paragraph 7 that excepted another pending lawsuit from the general release:

> Notwithstanding paragraph 7, Plaintiff may proceed with his pending lawsuit, styled as *Norwood v. Dart, et al.*, 17 C 5769, which is currently pending the United States District Court, Northern District of Illinois, Eastern Division, and nothing in this Agreement shall affect, alter or diminish in any way Mr. Norwood's rights related to that action.

(Agmt. ¶ 8.) In fact, Norwood is still actively litigating Case No. 17 CV 5769; according to the docket, the parties are currently exploring the possibility of a global settlement in the hope of resolving all of his multiple pending cases.

As such, Norwood's argument that he released only his claims in the *Norwood v. Khan* lawsuit is belied by the plain language in his settlement agreement and general release. As the United States Court of Appeals for the Seventh Circuit recently observed, "[i]t would have been odd for the settlement ***not*** to mention the underlying suit that prompted it; the desire to dispose of those claims

5

is what drove the parties to the bargaining table." *Crosby*, 949 F.3d at 361 (emphasis in original). That said, as the 2018 settlement agreement makes clear, Norwood agreed to do more than dismiss the claims in the *Norwood v. Khan* lawsuit. The instant lawsuit stems from events that took place in December 2017. Thus, the November 2018 settlement and general release, on its face, bars this lawsuit.

In fact, as the Defendants note, this Court previously ruled in another lawsuit that the parties' settlement agreement precluded any additional lawsuits against Cook County Jail officials stemming from incidents that occurred prior to the date of that agreement. *See Norwood v. Dart*, Case No. 19 CV 1944 (N.D. Ill.), R. 56, Memorandum and Opinion of June 22, 2020 (Coleman, J.) (granting similar motion for judgment on the pleadings in another of Norwood's cases).

The Court has already considered and rejected Norwood's assertion that he did not understand that he was settling any claims beyond those raised in Case No. 18 CV 4890, the case in which he and Cook County entered the agreement. And, in the Court's experience, Norwood has shown himself to be a particularly shrewd and savvy litigator in the many cases he has litigated to date, notwithstanding his *pro se* status. Indeed, even though the Court does not adopt the arguments Norwood makes in his brief, the Court observes that the brief is sophisticated and well-reasoned.

Norwood now accuses his retained attorney in the matter in which he executed the settlement agreement of malpractice for not spending enough time on the case. But there is no Sixth Amendment right to effective assistance of counsel in a civil case. *See Beauty Enterprises, Inc. v. Gregory*, 825 F. App'x 378, 382 (7th Cir. 2020) (unpublished opinion) (citing *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001)). Despite Norwood's dissatisfaction, a highly experienced attorney who specializes in prisoner civil rights litigation represented him and helped him obtain what defendants characterize as a "sizable monetary settlement" [R. 58, Defendants' Motion for Judgment on the Pleadings, at p. 2.] in a case involving delayed treatment for an abscessed tooth. In the

unlikely event that Norwood's lawyer did not take it upon himself to explain the parameters of the agreement, he could have answered any questions Norwood might have posed to him about its scope. Moreover, if Norwood had any reservations whatsoever about the agreement, nothing prevented him from withholding his signature until his questions and concerns were addressed.

In sum, under the circumstances and construing the settlement agreement as a whole, the Court concludes that the release language is broad and encompasses more than the 2018 *Norwood v. Khan* claims. The Court specifically finds that the release bars the claims raised in this lawsuit based on events that happened almost a year before Norwood signed the general release in November 2018. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) ("a party need not enumerate the specific claims [the party] is waiving in a general release."). If the Court were to interpret the settlement agreement and general release as Norwood argues, the language "including but not limited to" would be rendered superfluous resulting in an unreasonable interpretation of the parties' intent. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Serv. Group, Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (Illinois courts attempt to "give meaning to every provision of the contract and avoid a construction that would render a provision superfluous."). Because the unambiguous language in the 2018 settlement released Norwood's claims in this matter, the Court grants defendants' Rule 12(c) motion for judgment on the pleadings.

**Conclusion**

For the foregoing reasons, the Court grants defendants' Rule 12(c) motion [58]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 2/12/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

7